UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| OPERATION: HEROES, LTD.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>PROCTER AND GAMBLE PRODUCTIONS, INC., et al.,<br><br>　　　　　　Defendants, | Case No. 2:12-cv-00214-MMD-GWF<br><br>ORDER<br><br>(Defendants' Motion to Dismiss – dkt. no. 34) |

Before the Court is Defendants Procter & Gamble Productions, Inc. ("Productions"), The Procter & Gamble Company ("Company") (collectively, the "P & G Defendants"), and TeleNext Media, Inc.'s ("TeleNext") Motion to Dismiss. (Dkt. no. 34). The Court stayed the proceedings in this case against Defendant Productions. (Dkt. no. 46.) Accordingly, this Order relates only to Plaintiff's claims against Defendants Company and TeleNext. For the reasons discussed below, Defendants' Motion is denied.

**I.   BACKGROUND**

Plaintiff Operation: Heroes created and developed the idea for an awards show entitled "Operation: Heroes." (Dkt. no. 25 at ¶ 8.) The show was initially planned to take

place in Las Vegas, Nevada, and would recognize and award members of the American military, police force, and firefighter units for "acts of valor committed in the line of duty." (Dkt. no. 38 at 4.)  Columbia Broadcasting System ("CBS") agreed to televise the Awards Show.  Plaintiff planned for celebrity vocalist Wayne Newton to host/emcee the event, and for several other celebrities to present during the ceremony. (Dkt. no. 25 at ¶ 9.) The plan was to produce a live, two-hour prime-time television special over Memorial Day weekend 2010. (*Id.* at ¶ 8.) This broadcast was to be followed by a national media bus tour, the production of a television documentary, as well as sales of event-related merchandise. (*Id.*) Plaintiff's intent was to make the Awards Show and subsequent related events an annual event. (*Id.*)

Plaintiff, through its principal R.C. Foster, contacted Company in August 2009 regarding the possibility of sponsoring Operation: Heroes.  Company directed Plaintiff to its production company, Productions, and informed Plaintiff that Productions would consider its proposal.  Representatives from Productions and Plaintiff met on or about August 25-26, 2009, in Las Vegas, Nevada regarding the proposal. (Dkt. no. 38-1 at ¶ 3.) Defendants claim that Plaintiff made several misrepresentations about its resources, experience, and ability to produce a television awards show in order to convince Productions to participate in the show. (Dkt. no. 31 at 3-4.)

Productions signed an agreement to participate in October 2009. Plaintiff alleges that the agreement was for Productions to sponsor the event in the amount of $1,425,000.  $125,000 of that was to be paid directly to Plaintiff; the remainder Productions would pay directly to CBS. (Dkt. no. 25 at ¶ 11.) Productions hired TeleNext, a television production company, to assist in the production.

The parties dispute what happened after this point. Plaintiff alleges that Defendants exerted pressure on it to expand its production budget and transform the awards show into a "garish Hollywood spectacle" rather than the "tasteful, solemn tribute" Plaintiff originally envisioned. (Dkt. no. 38 at 4.)  Defendants assert that Plaintiff had always represented that it either had or would secure "some of the biggest names in

1  film, television, and music" for the awards show, but that it later became clear to
2  Productions that Plaintiff lacked the skills and capabilities to produce a high-quality
3  awards show and that Plaintiff could not secure "A"-list celebrities for the show. (Dkt. no.
4  31 at 4.) Defendants assert that because Plaintiff was "unable to deliver as required by
5  the Agreement," Productions exercised its "cancellation right" as set forth in the
6  agreement.[1] (*Id.*)

Productions failed to provide CBS the $1,000,000 line of credit due to CBS under the agreement. The awards show did not happen. Plaintiff asserts that "as a result of [Production's] breach and [D]efendants' tortious interference with the CBS contract," CBS chose not to go forward with the awards show and refused to do business with Operation: Heroes in the future. (Dkt. no. 38 at 4.)

Plaintiff filed its original Complaint in this Court on February 10, 2012. (Dkt. no. 1.) It filed a First Amended Complaint ("FAC") on May 18, 2012. (Dkt. no. 25.) Defendants now move to dismiss those claims asserted against them in the FAC. (Dkt. no. 34.)

## II.   MOTION TO DISMISS

### A. Legal Standard

On a 12(b)(6) motion, the court must determine "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 (9th Cir.2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-

---

[1] Defendants did, however, pay a $125,000 sponsorship fee and $300,000 to CBS upon exiting the project.

moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (citation and internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

**B. Interference with Contract**

Plaintiff alleges that Company and TeleNext interfered with its contract with Productions by convincing Productions to breach its contractual relationship with Operation: Heroes. Plaintiff further contends that Defendants interfered with its contract with CBS by (1) failing to provide the $1,000,000 letter of credit to CBS and (2) intentionally frustrating and preventing the day-to-day operations of Operation: Heroes.

Under Nevada law, a plaintiff claiming intentional interference with contractual relations must establish "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003). The parties agree that elements one and two are satisfied here.

Defendants assert that Plaintiff fails to allege sufficient facts to support elements three, four, and five. The Court disagrees. Plaintiff alleges the following facts to support these elements:

- Defendants demanded that Operation: Heroes run its operations in a certain way, demanding that Operation: Heroes make significant and expensive changes to its production budget, modifying its staffing, production sets, event site, and talent (dkt. no. 25 at ¶ 13);

- Defendants insisted upon changing the character of the broadcast into a "typical entertainment industry/advertiser-broadcasting awards show" (*id.*);

- Defendants shifted the focus and tone of the show (*id.*);

- After it became apparent that Defendants and Operation: Heroes had different visions for the awards show, Defendants' agents contacted event sponsors and "slandered" Operation: Heroes (*id.* at ¶ 14);

- Defendants delayed and changed the initially-agreed upon press conference dates, prohibiting Operation: Heroes from distributing national news media releases and preventing Operation: Heroes from obtaining various sponsorships (*id.*);

- Defendants encouraged Productions to refuse to provide the $1 million letter of credit to CBS (*id.* at ¶ 15);

- As a result of the failure to deliver the letter of credit, CBS terminated its agreement with Operation: Heroes for non-payment (*id.* at ¶ 16), and informed Operation: Heroes that it would not consider broadcasting the awards show on the planned date or at a future date (*id.* at ¶ 17)

These facts do not *prove* any of the required elements, nor demonstrate that it was Company and/or TeleNext, rather than Productions, who was involved in the contractual interference. But such proof is not necessary at this stage. Under *Iqbal*, a claim is facially plausible when a complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. 556 U.S. at 678. The allegations described above support Plaintiff's contention that Defendants (1) intentionally took steps to interfere with its contract with CBS, for example, by placing the phone calls to sponsors and making Plaintiff change the tenor of its production; (2) that because of these actions, there was in fact an interference, and (3) that Plaintiff incurred damages as a result because the event did not occur.

Defendants' Motion to Dismiss this cause of action against Defendants Company and TeleNext is accordingly denied.

**C.   Interference with Prospective Economic Advantage**

Plaintiff asserts that "Defendants knew that interfering with the awards show, demanding that the awards show increase its budget, changing the tenor of the awards show into a garish, Hollywood-style affair, failing to provide CBS the $1,000,000 line of credit, and finally the late timing of [Productions'] decision not to provide the line of credit would result in the failure of the Operation: Heroes event and consequently prevent

[Plaintiff] from taking advantage of related economic opportunities [both regarding the 2010 awards show and potential future endeavors between Plaintiff and CBS]." (Dkt. no. 25 at ¶ 41.)

"In order to establish a claim for intentional interference with prospective economic advantage, a plaintiff must establish: (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct." *Stent v. Bank of Am.*, No. 11-CV-00770, 2012 WL 760776, at *2 (D. Nev. Mar. 8, 2012).

Elements one and two are satisfied here. Plaintiff alleges that Defendants interfered with at least two several prospective contractual relationships – with Greyhound for a sponsored bus tour relating to the event and with CBS for the broadcast of the event and future similar events as well as the sale of Operation: Heroes merchandise. (Dkt. no. 25 at ¶ 39.) Because of Defendants' intimate relationship with the project, it is plausible that they knew of these prospective relationships. Element four is also satisfied for the purpose of this Motion because Plaintiff properly alleges that there was no privilege or other justification for the Defendants' actions. (*Id.* at ¶ 42.)

Turning to elements three and five, for largely the same reasons discussed in Part II.B., the Court holds that Plaintiff's Complaint pleads facts sufficient to support this cause of action. Plaintiff alleges that the parties disagreed about the event's content and tone. These facts allow the Court to draw a reasonable inference that Defendants had intent to harm Plaintiff. Further, the facts alleged regarding the steps Defendants took to harm Plaintiff's reputation with its sponsors and potential sponsors, and Defendants' encouraging Productions to withhold payment from CBS, support Plaintiff's contention that it suffered actual harm as a result of Defendants' conduct.

For these reasons, Defendants' Motion to Dismiss this cause of action against Defendants Company and TeleNext is denied.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (dkt. no. 34) is DENIED.

DATED THIS 28th day of November 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE